

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| CLARA R. GORDON,<br>PLAINTIFF,<br><br>VS.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY,<br>DEFENDANT. | §<br>§<br>§<br>§ CIVIL ACTION NO. 4:09-CV-059-A<br>§<br>§<br>§<br>§<br>§ |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

The plaintiff, Clara R. Gordon ("Gordon"), filed an application for Title II disability insurance benefits ("DIB") on December 16, 2003, alleging a disability onset date of February 19, 2002. (Transcript ("Tr.") 28, 166-68, 218.)[1] That application was denied initially and on reconsideration. (Tr. 73-77, 79-82.) Gordon timely requested a hearing before an administrative law judge ("ALJ"), and hearings were held on July 12, 2005 (Tr. 636-61) and again on September 20,

---

[1] The relevant time period for Gordon's application is February 19, 2002, her alleged onset date, through March 5, 2008, the date of her last hearing before the ALJ. (Tr. 28-29.)

2006 (Tr. 662-84.) Each of those hearings resulted in denials of Gordon's claims. (Tr. 45-57; 58-67), but the Appeals Counsel vacated and remanded those decisions and ordered additional administrative proceedings. (Tr. 106-09; 68-72.) A third hearing was held in Fort Worth, Texas before ALJ Herbert J. Green on March 5, 2008. (Tr. 685-716.)

In her December 16, 2003 application, Gordon claimed disability due to a number of impairments including migraine headaches, diabetes, depression, and panic disorder. (Tr. 199-200, 206, 218.) On March 25, 2008, ALJ Green issued an unfavorable decision finding that Gordon was not disabled. (Tr. 25-40.) The Appeals Council denied Gordon's request for review on November 21, 2008. (Tr. 8-11.) Gordon subsequently filed the instant action in federal court on January 22, 2009. (doc. #1.)

## II. STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is not severe if it has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work. 20 C.F.R.

§§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). At the third step, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198; *see also Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A denial of benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only

if no credible evidentiary choices or medical findings support the decision. *Id.* This court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). The Court must, however, carefully scrutinize the record to determine if the evidence is present.

## III. ISSUE

Whether the ALJ's determination that Gordon was not disabled is supported by substantial evidence.

## IV. ADMINISTRATIVE RECORD

### A. Background and Vocational History

Gordon was born on November 8, 1960. (Tr. 688, 712-13.) She has a high school education. (*Id.*) Her past relevant work included jobs as an administrative assistant, proof operator, data entry inside sales, worker, crossing guard, office clerk, check cashier, check cashier supervisor, and convenience store manager. (*Id.*) Gordon has not engaged in substantial gainful activity from the time of her alleged onset date through the date of the ALJ's decision. (Tr. 29)

### B. Relevant Treatment History

Gordon's medical records establish that she has a history of migraine headaches, obesity, diabetes mellitus, depression versus bipolar disorder, and panic attacks.[2] (*See, e.g.*, Tr. 29.)

### C. Administrative Hearing

At her hearing before the ALJ, Gordon was represented by an attorney. (Tr. 685-716.) She testified that she lived with her daughter, and that before that she had lived with a friend in a motel

---

[2] Relevant evidence from the record is set forth more fully in the Court's discussion of Gordon's allegations. (*See* Section V, *infra.*)

-4-

and at the Salvation Army before that. (Tr. 691-92.) Gordon testified that she had a past work history including jobs as an administrative assistant, a proof operator, a purchasing clerk, a data entry clerk, an office clerk, a check cashier, a check cashier manager, and a convenience store manager. (Tr. 688-90.)

Gordon testified that she was unable to work due to migraine headaches and problems with her mental condition, which included bipolar disorder and severe depression. (Tr. 690-91.) She said that the mood stabilizers she took for her bipolar disorder helped her mood, but that she could not work because they made her very sleepy. (Tr. 691.) Gordon also testified that in 2007 she had been in a relationship with someone for about six months and that she lived with him for a period of time. (Tr. 692-93.) Although Gordon testified repeatedly that she needed to be on her bipolar medication, she also admitted that there were numerous instances documented in her medical records when she ran out of medicine. (Tr. 693-94.) She also testified that she had panic attacks as infrequently as every six months to as frequently as every month. (Tr. 701-03.)

Medical expert ("ME") Dr. John Simonds, ("Simonds") also testified. (Tr. 705-12.) After discussing his review of Gordon's medical records, Simonds stated that none of her impairments met or equaled the requirements of any listing. (Tr. 706-08.) He determined that Gordon should not have significant exertional limitations. (Tr. 708.) But he found that she was mildly restricted in activities of daily living, as well as socially. (Tr. 709.) Finally, he found that Gordon had moderately impaired concentration and a history of decompensation. (*Id.*)

Lastly, vocational expert ("VE") Barbara Dunlap ("Dunlap) testified. (Tr. 712-716.) The ALJ asked her to assume a hypothetical individual of Gordon's age, education, and work history.

(Tr. 713.) He asked her to further assume that the hypothetical individual was limited to light work, that she could not work at heights, that she was limited to low stress noncomplex jobs, and that she had a moderate concentration deficit. (*Id.*) He then asked if there were any jobs in the national economy that such an individual could perform. (*Id.*) The VE testified that there were 80,000 light laundry worker jobs, 100,000 light cleaning positions and 80,000 packager/sorter positions in the national economy that such an individual could perform. (Tr. 713.)

D. The ALJ's Decision

In entering his decision, the ALJ performed the five-step sequential evaluation process for determining whether a person is disabled. (Tr. 28-40); 20 C.F.R. § 416.920(b). At step one, the ALJ found that Gordon met the disability insured status requirements of the Act from the time she alleged her disability began through the date of the decision. (Tr. 29.) He also found that she had not engaged in substantial gainful activity since February 19, 2002. (*Id.*, citing 20 C.F.R. §§ 404.1510 and 404.1572).

At step two, the ALJ determined that the medical evidence established that Gordon had a history of "migraine headaches, obesity, diabetes mellitus, depression versus a bipolar disorder and panic attacks," all of which he acknowledged were "severe" under the Act. (Tr. 29.) The ALJ continued to step three, finding that Gordon did not have an impairment or combination of impairments that met or equaled a listing at step three of the disability analysis. (Tr.29, citing 20 C.F.R. Part 404, Subpart P, Appendix 1.)

The ALJ then performed a detailed analysis of Gordon's medical history and of the ME's testimony before formulating a residual functional capacity ("RFC") for Gordon as follows:

> [Gordon] has the residual functioning capacity to perform, on a continuing and sustained basis, the exertional and nonexertional requirements of light work activity which does not entail working at heights, which is low stress in nature, which entails only non-complex jobs, and which may be performed by a person having a moderate concentration deficit.

(Tr. 37, citing 20 C.F.R. § 404.1545.) The ALJ rejected the opinions of the State Agency physicians at the initial and reconsideration levels because they were rendered without the benefit of personally observing Gordon, and because they did not review all of the pertinent evidence. (Tr. 38.)

At step four, the ALJ found that Gordon was unable to perform her past relevant work. (Tr. 38.) Then, at step five, the ALJ considered Gordon's RFC and relevant vocational characteristics, and determined that, although Gordon could not perform the full range of light work, there were jobs existing in significant numbers that she could perform, including jobs as a laundry worker, cleaner, and packager/sorter. (Tr. 39.) Ultimately, the ALJ concluded that Gordon was not disabled within the meaning of the Act at any time from the alleged date of onset through the date of the decision. (Tr. at 39.)

## V. DISCUSSION

Gordon's sole issue on appeal is whether the Commissioner's decision that she was not disabled is supported by substantial evidence. Specifically, she argues that (1) the ALJ failed to fully develop the medical evidence of record, (2) the ALJ improperly evaluated the opinion evidence, and (3) the ALJ improperly evaluated Gordon's RFC by failing to consider all of her vocationally significant impairments. (Plaintiff's Brief ("Pl. Br.") at 1-2.)

A.  <u>Whether the ALJ failed to fully develop the record.</u>

Gordon first argues that the ALJ failed to fully develop the record. (Pl. Br. at 11-13, citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) and 20 C.F.R. § 404.1512.) According to Gordon, the Appeals Council directed the ALJ to recontact Dr. Mal Sharaf ("Sharaf") for further information concerning the basis for his conclusion that Gordon was disabled. (Pl. Br. at 11, citing Tr. 70.) Gordon argues that the Appeals Council likewise directed the ALJ to contact Dr. Deborah Whitehead Gleaves ("Gleaves") to clarify the apparent inconsistency between her report and the accompanying assessment. (*Id.*; Tr. 487-89.) In choosing to call upon an ME to render an opinion rather than contact the two aforementioned doctors, Gordon argues that the ALJ failed in his duty to resolve conflicts in the record. (Pl. Br. at 11-12; Tr. 12.)

The Court finds that the ALJ complied with the intent of the Order of the Appeals Council. In that Order, the Appeals Council found that the order of the previous ALJ did not adequately evaluate the treating and examining source opinions regarding the nature and severity of the claimant's mental health. (Tr. 69-70.) Specifically, the ALJ failed to adequately address the opinions of Dr. Peter C. Holms ("Holms"), Sharaf, and Gleaves. (*Id.*) The Appeals Council directed the next ALJ to address the opinions of Holms and Sharaf, and, *if possible*, to contact Gleaves and Sharaf for clarification of their opinions. (*Id.*) The Council also instructed the ALJ to obtain evidence from a medical expert to clarify the nature and severity of Gordon's impairment. (Tr. 71.)

The Appeals Council noted that although Gleaves found that Gordon was not impaired in her ability to understand, remember and carry out instructions, or in the ability to respond appropriately to supervision, co-workers and work pressure in a work setting, she nevertheless gave her a global

assessment of functioning ("GAF") score of 50,[3] indicating serious impairment or symptoms. (Tr. 70, citing Exhibit 18F.) The ME addressed Gleaves' evaluation at the hearing, and the ALJ also addressed it in his opinion. (Tr. 32-33.) There is no objective data or findings from Gleaves' evaluation to support the GAF score assessed. Gleaves' medical source statement, indicating that Gordon did not have functional limitations, is consistent with her findings from the July 2006 examination she conducted of Gordon, in which she noted that Gordon "did not have any significant difficulties with attention, concentration, or short-term memory," and that Gordon was "able to focus and pay attention for the entire hour and twenty minute interview and testing." (Tr. 32-33, 481.) Gleaves also found that Gordon had appropriate affect, that she was fully oriented, cooperative, and able to express her thoughts in a relevant, logical, coherent manner. (Tr. 33, 479, 482.)

The ALJ likewise addressed Holm's evaluation of Gordon. (Tr. 30, 276-79.) Holm evaluated Gordon in February 2004 and found that she was fully oriented, cooperative and alert. (*Id.*) Holm found that Gordon was "aware of her diminished attention and concentration," but he did not assess any limitations on her mental functioning, and noted that she would spend additional time managing any benefits that may be assigned to her. (Tr. 279.) And the ALJ accounted for a moderate concentration deficit in assessing Gordon's RFC. (Tr. 37-38.)

The only apparent inconsistency in the evaluations of Gleaves and Holm is that each of them inexplicably gave Gordon GAF scores of 50 without noting objective findings to support such scores. (Tr. 30, 33, 279, 485.) The ME discussed this inconsistency in his testimony, and the ALJ

---

[3] The American Psychiatric Association defines an individual whose GAF is between 41 and 50 as one who has "**Serious symptoms** (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (e.g. no friends, unable to keep a job)." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (4th Ed., 2000) at 34 (emphasis in original).

also discussed and resolved the inconsistency in his opinion. (Tr. 30, 33, 279, 485, 707.) Specifically, the ALJ noted that a GAF score of 50 reflected serious symptoms, including serious impairments in social, occupational, or school functioning, but that no such findings or symptoms were reflected in Gleaves' or Holm's objective clinical findings. (Tr. 30, 22, 276-79, 479-85.) The ALJ found that Gleaves and Holm appeared to base their GAF scores on Gordon's uncorroborated complaints rather than on objective clinical findings from their own examinations. (Tr. 30, 33, 276-79, 479-85.) *See Greenspan v. Shalala*, 38 F.3d 232, 237-38 (5th Cir. 1994.)

An ALJ may reject a treating physician's opinion if he finds, with support in the record, that the physician is not credible and is "leaning over backwards to support the application for disability benefits." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985). Moreover, the Court notes that federal courts have declined to find such a strong correlation between an individual's GAF score and the ability or inability to work. *See* 65 Fed. Reg. 50,746, 50,764-50,76565 (Aug. 21, 2000) (Commissioner declines to endorse the GAF scale for use in Social Security and SSI disability programs, and states that the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings"). *See, e.g., Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007); *Wind v. Barnhart*, 133 F. App'x 684, 692 n.5 (11th Cir. 2005); *Glover v. Massanari*, No. 3-00-CV-2088-AH, 2001 WL 1112351, at *7 (N.D. Tex. Sept.14, 2001).

As the Court explains in the following section, the ALJ likewise properly dealt with the testimony of Sharaf. (Tr. 31-32.)

B. Whether the ALJ Properly Evaluated the Opinion Evidence.

Gordon next argues that the ALJ failed to properly consider the opinions of both Sharaf, her treating physician, and the State Agency Medical Consultants, who found that Gordon experienced moderate to marked limitations in her mental abilities. (Pl. Br. at 11-13.)

Sharaf checked a box on a Medical Release/Physician's Statement dated November 11, 2005 stating that Gordon was permanently disabled due to bipolar disorder, diabetes mellitus, and hypertension. (Tr. 31-32, 491.) The ALJ fully evaluated Sharaf's statement and declined to give it any weight based on a lack of corroboration from the objective medical evidence. (Tr. 31-32, 70.) The ALJ considered Sharaf's opinion, but noted that it was given after only one examination and that it "was not explained or supported by any clinical evidence contained in the record as a whole." (Tr. 35.) While it is true that a treating physician's opinions are "entitled to great weight," an ALJ may decrease reliance on such testimony where there is good cause. *Leggett v. Chater*, 67 F.3d 558 (5th Cir. 1995). Good cause in this case includes disregarding brief and conclusory statements which "are not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by evidence." *Id.* (citations and internal quotations omitted).

Moreover, the ultimate determination on whether a claimant is totally disabled "is an issue reserved to the Commissioner." *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003); *see also* 20 C.F.R. § 404.1527(e)(1). An ALJ must consider and weigh all medical opinions in the record, even opinions on issues that are reserved to the Commissioner. *Price v. Astrue*, 572 F.Supp.2d 703, 710 (N.D. Tex. 2008); 20 C.F.R. § 404.1527(e)(2), 416.927(e)(2). But a treating physician's opinion that a claimant is totally disabled or unable to work has "no special significance." *Frank*, 326 F.3d at

620; *see also* 20 C.F.R. § 404.1527(e)(1). The determination of disability always remains the province of the ALJ. *Id.* And an ALJ may reject the opinion of any physician regarding a claimant's disability status when the evidence supports a contrary conclusion. *See, e.g., Martinez v. Chater*, 64 F.3d 172, 175 (5th Cir. 1995) (citation omitted). From the record, the Court finds that the ALJ did not improperly discount the opinion of Gordon's treating physician.

Gordon also argues that the ALJ improperly rejected the opinions of the State Agency medical consultants, and she claims that the ALJ's basis for rejecting their opinions was not consistent with the record. (Pl. Br. at 13.) An ALJ must consider and weigh all medical opinions in the record, including opinions on a claimant's RFC. *See Price*, 572 F.Supp.2d at 710; 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2). But the ALJ retained the ultimate responsibility for determining Gordon's RFC. *See Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th. Cir. 1990).

In determining Gordon's RFC, the ALJ engaged in a detailed discussion of the medical evidence, including the opinion of the State Agency medical consultants. (Tr. 38, 291-93, 310-12.) Ultimately the ALJ rejected the opinions of the State Agency medical consultants, finding that they were inconsistent with the objective medical evidence contained in the administrative record. (Tr. 38.) He noted that numerous other mental evaluations showed that Gordon suffered from only mildly severe symptoms of depression. (Tr. 30-34, 276-79, 428, 432, 453, 458, 461, 466, 470, 472, 479, 482, 538, 541, 548, 553, 556, 560, 617, 631.) Moreover, the opinions of the State Agency medical consultants were given in March and July 2004. (Tr. 291-93, 310-312.) Thus they did not have the benefit of reviewing Gordon's complete treatment history, which included medical records

through 2008. (Tr. 34.) The Court finds that there is substantial evidence to support the ALJ's determination.

As for the ALJ's determination that Gordon's subjective complaints were not credible, the ALJ noted her repeated non-compliance with doctors' appointments and with taking her medication. (Tr. 37, 697.) He properly relied on this factor, in addition to a lack of corroborating medical evidence as well as evidence regarding her relationships and daily activities, to find her not credible. (*Id.*); *see also Johnson v. Sullivan*, 894 F.2d 683, 685 n. 4 (5th Cir. 1990) (claimant who fails to comply with treatment regimen is not entitled to disability).

Finally, Gordon claims that the Commissioner should have accepted the opinion of Dr. Olusegun Solano, who rendered an opinion in March 2008 that Gordon's concentration deficits affected her ability to perform the lower end of detailed tasks and unskilled tasks and that she would frequently experience interference with the attention and concentration needed to perform simple work tasks. (Tr. 41-42.) (Pl. Br. at 15-16.) But the Appeals Council properly determined that Solano's opinion did not provide a basis for review of the ALJ's decision because it did not constitute "new and material" evidence, and there is substantial evidence in the record demonstrating that Gordon suffered from only mild symptoms of depression. (Tr. 8-11, 279, 428, 432, 453, 458, 461, 466, 470, 472, 479, 482, 538, 541, 548, 553, 556, 560, 617, 631); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994) (holding that new evidence is only material if there is a reasonable possibility that it would have changed the outcome of the Commissioner's determination) (citations omitted).

C.  Whether the ALJ's RFC assessment is supported by substantial evidence.

In her last point on appeal, Gordon asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ's RFC assessment did not perform a function-by-function assessment of several of her severe impairments, including migraine headaches, obesity, diabetes, and panic disorder. (Pl. Br. at 16-17; citing Social Security Regulation 96-8p.) Thus, Gordon claims that the Commissioner's RFC assessment is deficient. (*Id.* at 17.)

The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th. Cir. 1990). After setting forth his analysis of Gordon's severe impairments and their impact on her functional ability to work, the ALJ formulated an RFC which took into account her physical and mental limitations in light of the evidence in the record. (Tr. 29-38.) As for her mental limitations, the ALJ limited Gordon to jobs which (1) did not require working at heights; (2) are low stress in nature; (3) are only non-complex; and (4) may be performed by a person with a moderate concentration deficit. (Tr. 37.) He specifically noted that she was unable to perform her past relevant work as an administrative assistant, a proof operator (bank), a purchasing clerk, a data entry clerk (inside sales), an office clerk, a check cashier, a check cashier supervisor, or as a convenience store manager. (Tr. 38.) There is substantial evidence in the record supporting his determination.

As for Gordon's allegations of limitations stemming from her migraine headaches, the ALJ specifically noted that while Gordon complained of disabling headaches, there were only a "handful" of complaints to her physicians about headaches or attempts to obtain medication for headache pain, and there was no evidence showing that Gordon experienced symptoms consistent with migraine

headaches, despite numerous physical and mental evaluations. (Tr. 29-30, 37, 395.) The ALJ also commented that Gordon's medical records showed that her headaches were "stable" and that they improved with medication. (Tr. 29, 336-37, 395, 444.)

As for her obesity, the ALJ noted that there was no evidence in the record showing that Gordon's weight imposed any additional limitations beyond those found by the ALJ in limiting her to light work that did not entail working at heights. (Tr. 29-35.) Regarding her diabetes, the ALJ noted that the condition had improved, that Gordon did not complain of the condition in July 2004, and that she did not return to her primary care physician until February 2005, when she had run out of several prescribed medications, including her diabetes testing supplies. (Tr. 30, 329, 339, 411.) At her hearing before the ALJ, the ME testified that Gordon's diabetes was under fair to good control when she was medically compliant and that the records did not contain any signs of end organ damage. (Tr. 34, 437-38, 706.) ) Thus the ALJ correctly did not include limitations for a condition controllable with medication. *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) ("If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability.")

## RECOMMENDATION

For the foregoing reasons, the Court recommends that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file, within fourteen (14) days after the party has been served with a copy of this document, specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation. The court is hereby extending the deadline until **August 30, 2010**, within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until **August 30, 2010** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

**SO ORDERED.**

**August 9, 2010**

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE